UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-22814-CIV-GOLD/MCALILEY

CREATIVE COMPOUNDS, LLC

     Plaintiff/Counter-Defendant,

vs.

STARMARK LABORATORIES, INC.

     Defendant/Counter-Plaintiff.

_____/

ORDER DENYING PLAINTIFF'S MOTION TO DISMISS [DE 98];
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
OF VALIDITY AND INFRINGEMENT [DE 59];CLOSING CASE

THIS CAUSE is before the Court on Defendant/Counter-Plaintiff Starmark Laboratories' ("Starmark") Motion for Summary Judgment of Validity and Infringement [DE 59], seeking summary judgment on the issues of validity and infringement of the claims of the United States Patent No. 7,109,373 (" '373 Patent"), and on the validity of United States Patent No. 7,129,273 (" '273 Patent"). Plaintiff/Counter-Defendant Creative Compounds ("Creative Compounds" or "Creative") filed a Memorandum of Law in Opposition to Starmark's Motion for Summary Judgment of Infringement and Invalidity [DE 78] ("Response"), and Starmark filed a Reply Memorandum in Support of its Motion for Summary Judgment [DE 87] ("Reply"). Oral argument on the Motion was held on June 26, 2009.

Just hours before oral argument on the summary judgment motion, Creative Compounds filed a Motion to Dismiss Under Rule 12(b)(1) [DE 98], arguing this Court lacks subject matter jurisdiction over Starmark's declaratory judgment action, brought through

a counterclaim, because Starmark lacked any reasonable apprehension of suit against it under the '273 Patent. Starmark filed a Response [DE 100], Creative Compounds filed a Reply [DE 101], and with leave of Court, Starmark filed a Sur-Reply [DE 105]. Having reviewed the briefs, I conclude that I do not require oral argument on the Motion to Dismiss, and I deny Creative Compounds' request for the same [DE 106].

As discussed below, I conclude that Starmark has standing to assert its Counterclaim alleging invalidity of the Creative '273 Patent. Further, based on Creative's failure to present expert testimony, as well as my conclusion that Creative's arguments on anticipation and derivation fail, I conclude that the Starmark '373 Patent is valid. Based on the expert testimony presented by Starmark, I conclude that the Creative 2CM product infringes the Starmark '373 Patent, and that the Creative '273 Patent is invalid. Accordingly, I deny Creative's Motion to Dismiss and grant Starmark's Motion for Summary Judgment.

## I. Motion to Dismiss

A.    Background

On October 26, 2007, Creative Compounds commenced the present action seeking judgment that Creative is not infringing Starmark's '373 Patent and that the claims of the '373 Patent are invalid [Complaint, DE 1]. Thereafter, on January 22, 2008, Starmark answered Creative's Complaint and brought counterclaims that Creative's 2CM product infringes the claims of the Starmark '373 Patent, and that the claims of the Creative '273 Patent are invalid [Answer, DE 10].

In its Motion to Dismiss, filed June 26, 2009, Creative Compounds argues that, under Supreme Court and Federal Circuit precedent, Starmark must have had an

2

reasonable apprehension of being sued for patent infringement on the Creative Compounds '273 Patent at the time Starmark asserted its declaratory judgment counterclaim seeking judgment that the'273 Patent is invalid.[1]   Because Creative Compounds had not sued Starmark for patent infringement on the '273 Patent, and because Creative had never accused Starmark of infringing the '273 Patent, Creative contends that Starmark lacked any reasonable apprehension of suit as of the date the counterclaim was filed. In opposition, Starmark cites several letters sent from Creative's principals and attorneys to SAN Corporation, the former assignee of the '373 Patent, and SAN's customers. The letters threatened legal action and claimed infringement.

B.    Standard of Review

A motion to dismiss under Rule 12(b)(1) may assert either a factual attack or a facial attack to jurisdiction. *Sinaltrainal v. Coca-Cola Co.*, --- F.3d ----, 2009 WL 2431463 at *3 (11th Cir. Aug. 11, 2009). "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir.1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

---

[1]

As discussed below, the issues raised on summary judgment are validity of the Starmark '373 Patent, Creative's infringement of the Starmark '373 Patent, and invalidity of the Creative '273 Patent. Only this third issue is implicated by the Motion to Dismiss.

3

In the present case, Creative Compounds does not explicitly identify whether its attack is facial or factual.  Because Creative Compounds references in its Motion factual allegations outside of the pleadings, and because Creative Compounds does not, in its Reply, object to Starmark's presentation of documents outside the pleadings, I evaluate Creative Compounds' Motion to Dismiss as a factual attack on Starmark's Counterclaim. Accordingly, I am "free to weigh the evidence and satisfy [myself] as to the existence of [my] power to hear the case." *Id.*

C.    Facts: The Letters

As this Motion to Dismiss has been briefed as a factual attack, I set forth the relevant evidence.  Starmark cites an August 28, 2006 letter [DE 100, p. 22] that is reflective of the letters relating to the '273 Patent that Creative sent to its competitors and Starmark's customers.  The letter, sent by Gary Haynes as President and CEO of Creative Compounds, states:

> I am aware that many in the industry of the have ignored the fact that Creative Compounds had a patent pending on Dicreatine Malate and have marketed this material or simply used Tricreatine Malate thinking you could do so until a patent was actually granted.  I am aware than many of you so to get the compound cheaper than Creative Compounds was marketing it for. I am here to inform you that I have many options available to me to resolve that thought process.
>
> ...
>
> For those of you that feel that Creative Compounds' price is too high compared to what you have been paying or that you will just simply remove it from your product, please understand that my other option is to pursue legal action for past infringement which can go back to the date of my application.  This means that we will legally pursue past royalties for using either Dicreatine Malate or Tricreatine Malate in a product over 3 ½ years.
>
> I feel that this is a very good compound and our first option is to work with as many companies as possible to keep supplying 2CM Dicreatine Malate.  This is the best option for everyone, but I will not hesitate to pursue legal action

4

is that is the only option given to me.

[DE 100, p. 22].

Enclosed with the letters and also circulated to competitors and customers was a letter from Creative's attorneys, the law firm of Adorno & Yoss. [DE 100, p. 24]. The letter, dated August 25, 2006,[2] is written from attorney Thomas L. Peterson to Gary Haynes, and advises that the Creative Patent covers Dicreatine Malate as well as Tricreatine Malate. Further, the letter references the '373 Patent, then associated with SAN Corporation:

> It has also come to my attention that SAN Corporation has sent a number of threatening letters to the industry alleging that it also has received a Notice of Allowance of its patent application entitled *Creatine Salts and Method of Making Same*. These letters purport to put the industry on notice of infringement of the patent, which, according to SAN, will soon issue.
>
> Even if SAN is correct that a patent will issue from its application, the patent will not be enforceable because of your prior inventions and work.

[DE 100, p. 24]. Attorney Peterson goes on to conclude that Haynes' work on dicreatine predates SAN's work, and states, "I do not believe that a patent issued to SAN on its application would be enforceable." [DE 100, p. 24].

As a result of the letters, some customers chose not to do business with SAN Corporation. For example, on October 31, 2006, the law firm of Drangel Bazerman & James informed Mr. Matthias Boldt, then of SAN Corporation, that their client, Ultimate Nutrition, had "recently received a communication from Mr. Gary L. Haynes of Creative Compounds." [DE 100, p. 27]. "He supplies a supporting letter from his counsel referring

---

2

While not important, it is unclear from the Court's copy whether the letter was dated August 25, 2006 or August 26, 2006. The parties appear to agree that it was dates August 25, 2006.

5

to your claims in this regard and asserts that your patent will not be enforceable because

of Mr. Haynes' prior invention. . . . We note your offer of a non-exclusive license . . . , but

our client cannot make any business decision until the conflicting claims by you and

Creative Compounds have been resolved." [DE 100, p. 27].

Mr. Matthias Boldt received a similar letter Andrea Bauer, Senior Legal IP Counsel

for Iovate.  The September 22, 2006 letter stated:

Upon our evaluation of the matter, we do not believe U.S. Patent 7,109,373
to be valid in light of U.S. Patent Application 2004-0020263.  Nevertheless,
moving forward, Iovate Health Science Research, Inc. will no longer be using
compounds covered by the 7,109,373 Patent in any of its formulations or
listed on product labeling.

[DE 100, p. 27].

Creative Compounds does not deny any of these letters. [DE 98, p. 5, "Although

Creative sent letters to come competitors notifying them of the issuance of the '273 Patent,

none of those letters went to Starmark."].

The '373 Patent, Creatine Salts and Method of Making Same, referenced in the

letter from Creative's counsel Thomas L. Peterson, was issued to Inventor Matthias Boldt

and Assignee SAN Corporation on September 19, 2006.  Starmark was formed in October

2006, and all right, title and interest to and in the '373 Patent have since been assigned to

Starmark.  Matthias Boldt is CERO, president, and sole shareholder of Starmark.

D.    Analysis

The Declaratory Judgment Act, 28 U.S.C. § 2201(a) provides in relevant part:

In a case of actual controversy within its jurisdiction ... any court of the United
States, upon the filing of an appropriate pleading, may declare the rights and
other legal relations of any interested party seeking such declaration,
whether or not further relief is or could be sought.

6

28 U.S.C. § 2201(a). The phrase "case of actual controversy" in the Act "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S. Ct. 461, 81 L. Ed. 617 (1937)); *see also Prasco, LLC v. Medicis Phar. Corp.*, 537 F. 3d 1329, 1335 (Fed. Cir. 2008) ("The Declaratory Judgment Act's requirement of 'a case of actual controversy' simply affirms this Constitutional requirement, having long been interpreted as referring to any case and controversy that is justiciable under Article III."). The Court must determine the presence or absence of jurisdiction on the facts existing at the time the complaint under consideration was filed. *GAF Building Materials Corp. v. Elk Corp. of Dallas*, 90 F. 3d 479, 483 (Fed. Cir. 1996) ( citing *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F. 2d 731, 734 n.2 (Fed. Cir. 1988).

In *MedImmune*, the Supreme Court summarized its decisions regarding whether a declaratory judgment claim satisfies the "case of actual controversy" requirement of Article III: "Our decisions have required that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 127 (quotations and citations omitted). The Supreme Court reiterated that there is no bright-line rule for determining whether an action satisfies the case or controversy requirement; to the contrary, the factual analysis must show that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and

reality to warrant the issuance of a declaratory judgment." *Id.*

In establishing this totality of the circumstances test, the Supreme Court rejected the notion that the "reasonable apprehension of suit" test previously employed by the Federal Circuit, was the only way to establish jurisdiction. *See Prasco, LLC v. Medicis Pharmaceutical Corp.,* 537 F.3d 1329, 1336 (Fed. Cir. 2008) ("[I]n *MedImmune*, the Supreme Court found that requiring a reasonable apprehension of suit conflicted with the Court's precedent."). As summarized by the Federal Circuit in *Benitec Australia, Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340 (Fed. Cir. 2007):

> Prior to *MedImmune*, our case law required that there be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity. However, the Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test.

*Id.* at 1344..

Following *MedImmune*, "proving a reasonable apprehension of suit is . . . one of many ways a patentee can satisfy the Supreme Court's more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." *Caraco Pharm. Labs. Ltd. v. Forest Labs.*, 527 F.3d 1278, 1290 (Fed. Cir. 2008). In sum, by expanding jurisdiction beyond the "reasonable apprehension of suit" test, *MedImmune* established a "more lenient standard," making is easier to establish declaratory judgment jurisdiction in patent cases. *Micron Technology, Inc. v. Mosaid Technologies, Inc.,* 518 F.3d 897, 902 (Fed. Cir. 2008) (""Whether intended or not, the now more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases.").

8

Here, as Starmark emphasizes, the letters sent by Creative prior to Starmark's filing of the counterclaim established a definite and concrete dispute sufficient to establish standing under Article III. The sum of Creative's argument is that Starmark does not have standing to bring a declaratory judgment action against the '273 Patent because it was SAN, and not Starmark, that had a dispute with Creative. [DE 101, p. 1]. I disagree, and conclude that the letters reflect a dispute that extends to Starmark.

The August 28, 2006 letter to the industry references "many in the industry" [DE 100, p. 22, ¶ 2] and repeatedly threatens legal action against those that use dicreatine or tricreatine malate not produced by Creative. [DE 100, p. 22, ¶ 4 (". . .my other option is to pursue legal action. . . "; "This means that we may legally pursue past royalties. . ."; ¶ 5 (". . . I will not hesitate to pursue legal action . . ."). Thus this letter explicitly threatens legal action against anyone in the industry that, in Creative's opinion, violates its claim to dicreatine malate, as reflected in the then-pending '273 Patent, establishing an objectively real threat of injury to such party. *See Prasco, LLC v. Medicis Pharmaceutical Corp.* 537 F.3d 1329, 1338 (Fed. Cir. 1008) ("Rather, it is the reality of the threat of ... injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."). Starmark fits squarely within this description.

The August 25, 2006 letter from Adorno & Yoss specifically references the patent entitled Creatine Salts and Method of Making Same, and states to Mr. Haynes, "the *patent* will not be enforceable because of your prior inventions and work." [DE 100, p. 24, ¶ 5 (emphasis added)]. The letter does not limit its analysis or potential action to SAN Corporation, but rather concentrates on the patent itself. It follows, then, that the dispute regarding dicreatine malate and the competing '273 and '373 patents runs with the patents.

9

As the '373 Patent is now held by Starmark, the dispute is between Creative and Starmark.[3] *See Prasco, LLC v. Medicis Pharmaceutical Corp.,* 537 F.3d 1329, 1338 (Fed. Cir. 2008) ("Absent an injury-in-fact fairly traceable to the patentee, there can be no immediate and real controversy.").

Similarly, the attorney letters sent on behalf of Iovate and Ultimate Nutrition, and in response to Creative's letter, reference the validity and enforceability of the '373 Patent, and do not limit the customers' understanding of the dispute to SAN Corporation. [DE 100, p. 29 (". . we do not believe U.S. Patent 7,109,373 to be valid . . ."; ". . . Iovate Health Science Research, Inc. will no longer be using compounds covered by the 7,109,373 Patent . . ."), p. 27 (". . . your patent will not be enforceable because of Mr. Haynes' prior invention")]. Therefore, based on the letters of record, I conclude that the dispute created by Creative concerns the patents at issue in this case, and therefore, the dispute extends to Starmark, the holder of the '373 Patent as of the date of filing of the counterclaim.

As to Creative's argument that Starmark does not have standing because Creative could not have taken legal action against Starmark as of the date of the declaratory action, Creative's argument fails.[4] First, under *MedImmune*, there is no requirement for Starmark

---

3

To Creative's argument that the letters were directed to Matthias Boldt, this only supports a finding of Starmark's standing, as Mr. Boldt is the inventor listed on the '373 Patent, the '373 Patent is currently held by Starmark, and Mr. Boldt is CEO, President, and sole shareholder of Starmark.

4

Creative continues to confuse a facial and factual attack on subject matter jurisdiction. While on the one hand arguing the letters (which are outside of the pleadings) are insufficient to create a dispute with Starmark, here Creative appear to rely on Starmark's allegations in the counterclaim (DE 101, p. 4, "Nowhere does Starmark allege that Creative could have taken action against it as of the date of the declaratory judgment action."). Creative cannot mix and match a facial and factual attack depending on which is more

10

to engage in "present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." Rather, potential infringement is only a factor in determining where a case or controversy exists. Second, Creative offers no evidence that Starmark did not have on the market at the time of the declaratory action a dicreatine malate product, or one marked with the '373 Patent. Most importantly, the record evidence shows that, as of at least August 1, 2007 (Starmark filed its counterclaim on January 22, 2008), Starmark sold "Element Hydrosoluble Creatine Salt." [DE 105, p. 12], a product admitted by Creative to be a creatine product. [DE 30, ¶ 9]. Accordingly, Creative could have pursued an infringement action against Starmark as of the date of the counterclaim. *See 3D Systems, Inc. v. Aarotech Laboratories, Inc.,* 160 F.3d 1373 (Fed. Cir. 1998) (discussing amendment to 35 U.S.C. § 271(a) (1994) which added "offer for sale" as a basis for patent infringement; "The amendment to § 271(a) represents a distinct change to the bases for patent infringement, because liability arose previously only as the result of an actual sale.").

Finally, I turn to Creative's extensive reliance on *Breckenridge Pharmaceutical v. Everett Laboratories, Inc.*, in which the court, on a facial challenge to subject matter jurisdiction, held that a complaint failed to establish declaratory judgment jurisdiction. 2009 WL 654214 (S.D. Fla. March 11, 2009). The *Breckenridge* complaint did not allege plaintiff's marketing of a potentially infringing product at the date of the action; defendant's knowledge of plaintiff's potentially infringing product, any threatening letters sent by defendant; any prior lawsuits (or threats of suit) by defendants to enforce its patent; or any

---

beneficial. In any event, Starmark alleged in its counterclaim that it sells Element Hydrosoluble Creatine Salt [DE 10, ¶ 9].

11

forms of prior conduct indicating defendant intended to enforce its patent. *Breckenridge* is readily distinguishable from the present case, as Starmark had on the market a dicreatine malate product at the time of its counterclaim, and Creative had circulated letters reflecting its intent to prosecute to enforce its rights under the '273 Patent.[5] Considering the totality of the circumstances, I conclude that Starmark has established a case or controversy under the Declaratory Judgment Act at the time the counterclaim was filed.

## II. Motion for Summary Judgment

### A. Procedural and Factual Background

As discussed above, on October 26, 2007, Creative commenced the present action seeking judgment that Creative is not infringing Starmark's '373 Patent and that the claims of the '373 Patent are invalid [Complaint, DE 1]. Thereafter, on January 22, 2008, Starmark answered Creative's Complaint and brought counterclaims that Creative's 2CM product infringes the claims of the Starmark '373 Patent, and that the claims of the Creative '273 Patent are invalid [Answer, DE 10]. On February 14, 2009, Creative filed its Amended Answer to Starmark's counterclaims [Amended Answer to Counterclaim, DE 30], and on July 14, 2008, upon agreement of the parties, I entered an Order on Claims Construction [DE 49] on select terms of the Starmark '373 Patent.

On February 27, 2009, Starmark filed the present Motion for Summary Judgment. In support of its Motion, Starmark filed a Statement of Undisputed Material Facts [DE 59,

---

5

Creative also relies on *Prasco*, which is also readily distinguishable, as plaintiff Prasco had not began to market its potentially infringing product at the time it filed suit. *Prasco*, 537 F.3d at 1334 ("At the time that Prasco filed its declaratory judgment action, it had not yet begun marketing OSCION™, but had devoted substantial efforts to development and marketing plans.").

12

p. 32] ("Statement"). Starmark also filed a Declaration of Daniel D. Perlmutter [DE 59-4], offered as an expert in this case, and various exhibits, including documents relating to the '373 and '273 patents and deposition testimony.

Creative then filed a Motion for Extension of Time to File Response to Motion for Summary Judgment [DE 61], seeking an extension of time due to the withdrawal of Creative's counsel Jonathan E. Fortman. I held a telephonic status conference on the matter, granted Mr. Fortman leave to withdraw, required Creative to respond to the summary judgment motion by May 15, 2009, and cautioned Creative that no further extensions would be granted [DE 71].

Creative filed on May 15, 2009 a Response to Starmark's Statement of Undisputed Material Facts ("Response Statement), which includes a Counterstatement of Material Facts ("Counterstatement") [DE 77]. In support, Creative submitted various exhibits, including the Declaration of Gary Lee Haynes [DE 81], documents relating to the '373 and '273 patents, and deposition testimony. Creative also submitted the Declaration of Harry G. Brittain, Ph.D., FRSC [DE 79], who Creative offered as an expert after the dates permitted in the Scheduling Order. Creative filed a corresponding motion for leave to amend its Rule 26 disclosures to designate Mr. Brittain as an expert, and for a 60-day extension for Mr. Brittain to prepare and submit an expert report [DE 73], which I denied.[6]

---

6

On May 15, 2009, with its response to the summary judgment motion, Creative filed a Motion for Leave to Amend Unclean Hands Affirmative Defense and For Relief From the Scheduling Order Discovery Deadline [DE 73], seeking leave to amend its Amended Answer to Counterclaim and its Rule 26 Disclosures. I held a telephonic status conference on Creative's motion on June 12, 2009, and, based on the tardiness of Creative's Motion, the undue prejudice to Starmark, and Creative's failure to show good cause for relief from the Scheduling Order, I denied the motion [DE 97].

I therefore do not consider Mr. Brittain's Declaration, and Creative has not offered (and cannot offer) an expert report or affidavit in support of its Response. Finally, Starmark filed a Reply [DE 87] and Reply to Creative's Counterstatement of Material Facts ("Reply Counterstatement") [DE 88], including exhibits. Upon review of the record, including the various statements of facts, as well as the affidavits and expert reports of record, I conclude that the following material facts are undisputed and supported by evidence in the record.[7]

1.    '373 Patent and History

Mr. Matthias Boldt is CEO, President, and sole shareholder of Defendant / Counter-Plaintiff / movant Starmark, which is in the dietary supplement industry. (Boldt Dep. Tr., DE 59-6, 8:3-17). Around 1994, Mr. Matthias Boldt reviewed a study that discussed creatine monohydrate. (*Id.*, DE 59-6, 14:11-14). Mr. Boldt proceeded to experiment with creatine monohydrate and other creatine compounds, and market several such compounds. (*Id.*, DE 59-6, 14:11-19; 59:14-60:22). Sometime between the years 2000 and 2002, Mr. Boldt reviewed the patent of Negrisoli, the Italian inventor of monocreatine malate. (*Id.* at 15:6-12; 16:2-22). Mr. Boldt called Mr. Negrisoli and asked Mr. Negrisoli if he would oppose Mr. Boldt filing a patent for dicreatine malate. (*Id.* at 15:13-19). Mr.

---

7

In the Southern District of Florida, a party moving for summary judgment must submit a statement of undisputed facts. *See* S.D. Fla. L.R. 7.5. If necessary, the non-moving party may file a concise statement of the material facts as to which it is contended there exists a genuine issue to be tried. *Id.* Each disputed and undisputed fact must be supported by specific evidence in the record, such as depositions, answers to interrogatories, admissions, and affidavits on file with the Court. *Id.* All facts set forth in the movant's statement which are supported by evidence in the record are deemed admitted unless controverted by the non-moving party. *Id.*

Negrisoli advised that he had no further interest in such patent, and Mr. Boldt could proceed as he wished. (*Id.* at 15:20-23). Thereafter, in the late part of 2001 or the early part of 2002, Mr. Boldt conducted internet searches to find a manufacturer for dicreatine malate. (*Id.* at 23:21-23). Mr. Boldt then submitted a provisional patent application, No. 60/434,245, on December 18, 2002, and a utility patent application, No. 10/740,263, on December 18, 2003 for dicreatine malate. (Statement ¶¶ 4-5; Provisional Application Cover Sheet, DE 78-20; Transmittal Letter, DE 59-5).

On September 19, 2006, the United States Patent & Trademark Office issued Patent No. 7,109,373, entitled Creatine Salts and Method of Making Same, to Inventor Matthias Boldt and Assignee SAN Corporation. (Statement ¶ 6; '373 Patent, DE 59-2). All right, title and interest to and in the '373 Patent have since been assigned to Starmark. (Statement ¶¶ 3, 15).

The '373 Patent is generally directed to creatine salts and the method of making such salts ('373 Patent, DE 59-2, Col. 1, lines 13-14) and contains thirteen claims:

1.    A creatine salt having the formula

$$[NH_2C (=NH) N (CH_3) (CH_2COOH]_2 \cdot A$$

wherein A represents an anion of a dicarboxylic acid.

2.    The creatine salt of claim 1, wherein A is an anion of maleic acid, malic acid, fumaric acid, or tartaric acid.

3.    The creatine salt of claim 1, wherein A is an anion of malic acid.

4.    The creatine salt of claim 1, wherein A is an anion of maleic acid.

5.    The creatine salt of claim 1, wherein A is an anion of fumaric acid.

6.    The creatine salt of claim 1, wherein A is an anion of tartaric acid.

7.  A process comprising reacting a molar excess of creatine monohydrate and a dicarboxylic acid or a tricarboxylic acid with heat to form creatine salt having the formula:

$$[NH_2C \text{ (=NH) N (CH}_3) \text{ (CH}_2COOH]_2 \cdot A$$

wherein A represents an anion of dicarboxylic acid.

8.  The process of claim 7, wherein the reaction is carried out in an alcohol solvent.

9.  The process of claim 7, further comprising separating and drying the creatine salt.

10.  The process of claim 7, wherein A is an anion of malic acid.

11.  The process of claim 7, wherein A is an anion of maleic acid.

12.  The process of claim 7, wherein A is an anion of fumaric acid.

13.  The process of claim 7, wherein A is an anion of tartaric acid.

(*Id.* at Co. 5 and 6; Perlmutter Declaration and Expert Report, DE 59-4, pp. 5-7). Starmark has accused Creative of infringing Claims 1-3 and 7-10 of the '373 Patent by offering for making, using, offering for sale and selling Creative's 2CM product. (Statement ¶¶ 7,20-21).

2.  Claim Construction Order

On July 11, 2008, I entered an Order Regarding Construction of Claim Terms, in which I discussed construction of the claim terms for Claims 1, 2, 3, 7, 8, 9, and 10 of the '373 Patent. (DE 49; Statement ¶ 22). Specifically, I entered the following constructions:

16

| Creatine Salt | A compound formed by salinizing creatine with a dicarboxylic organic acid. The reaction creates a hydrosoluble, stable organic salt of creatine characterized by high water solubility and comprising two molecules of creatine and one molecule of anion derived from a dicarboxylic acid. |
|---|---|
| Anion | A negatively charged ion of general formula: (-COO)- |
| Dicarboxylic Acid | An organic acid that has two chemically active (-COOH) groups in its structure. |
| Malic Acid | A naturally occurring dicarboxylic acid of gross formula $C_4H_6O_5$. |
| Molar Excess | The quantity of any chemical in a given reaction whose amount present in the reacting mixture exceeds the molar ratio for that reaction. |
| Creatine Monohydrate | A solid form of creatine that can be crystallized from its aqueous solution by evaporating the water or by changing the temperature to alter its solubility which, as it solidifies, incorporates one molecule of water with each molecule of creatine, forming the solid crystalline monohydrate. |
| Tricarboxylic Acid | An organic acid that has three chemically active (-COOH) groups in its structure |

3.    '273 Patent and History

Mr. Gary Lee Haynes is President and CEO of Creative Compounds. (Statement ¶ 20). Mr. Derek Wayne Cornelius is a consultant to Creative to develop new products., and also owns Syntrax Innovations ("Syntrax"), which develops and markets dietary supplements and food products. (Counterstatement ¶¶ 1-2). On November 2, 2001, Mr. Cornelius emailed Liu Shu Qing of Tiancheng, his manufacturer for creatine products, and referenced the manufacturing of "creatine malate," "dicreatine malate," and "tricreatine malate." (Email Chain, DE 59-14, p. 5). Mr. Cornelius wrote that "the technology behind the creatine malates should be nearly the same as the creatine citrates," referencing the

17

creatine citrates that he had previously ordered from Tiancheng. (*Id.* at p. 4). On November 6, 2001, Mr. Cornelius followed up with Liu Shu Qing on the manufacturing of creatine malate and dicreatine malate, and ensured that Tiancheng was working on tricreatine malate as well. (*Id.* at p.3). A few days later, on November 8, 2001, Mr. Cornelius again wrote to Liu Shu Qing; this time Mr. Cornelius stated, "Thank you for your hard work on the creatine malates. If you can produce good quality product, I am sure we can have a very successful relationship on the project. We will obtain the patent on this material and be exclusive of each other and you can depend on us and us likewise on you." (*Id.*)

In late November 2001 or December 2001, Mr. Haynes and Mr. Cornelius flew to China to visit Tiancheng regarding the manufacture of the creatine malates, including dicreatine malate. (Cornelius Decl. ¶ 6, DE 80). Thereafter, on January 3 and 4, 2002, Mr. Cornelius wrote to Liu Shu Qing asking for a "price on Creatine Malate and Dicreatine Malate," which Tiencheng quoted on January 8, 2002. (Email Chain, DE 78-9, p. 2; DE 78-8, pp. 2, 4). The next day, on January 9, 2002, Mr. Cornelius inquired why the price of Creatine Malate and Dicreatine Malate was higher than Tricreatine Malate (*Id.*).[8] Mr. Cornelius, who was a biology major as an undergraduate and was taught to keep lab notebooks, testified that he kept no lab notebook relating to his alleged invention of dicreatine malate. (Statement ¶ 28).

---

[8]

Other than these documents, Mr. Haynes and Mr. Cornelius were unable to identify any other documentary evidence that the invention claimed in the Creative '273 Patent predates the April 30, 2003 patent application, and did not produce any other such documentary evidence in discovery. (Statement ¶¶ 31, 36-37).

18

On April 30, 2003, Creative submitted application No. 10/249,683 for dicreatine malate. (Statement ¶ 17; '273 Patent, DE 59-12). Prior to this filing, Creative did not file any documents with the PTO relating to dicreatine malate. (Statement ¶ 18). The United States Patent & Trademark Office issued Patent No. 7,129,273, entitled Dicreatine Malate, to Inventors Derek Wayne Cornelius and Gary Lee Haynes, and Assignee Creative Compounds LLC on October 31, 2006. ('273 Patent, DE 59-12). Creative has marketed and sold dicreatine malate under the trade name 2CM, and, as discussed above, Starmark has accused Creative of infringing Claims 1-3 and 7-10 of the '373 Patent by offering for making, using, offering for sale and selling Creative's 2CM product. (Statement ¶¶ 7,20-21).

## 4. Syntrax and Joseph Rodrigues

Joseph Rodrigues was a national sales manager at Syntrax, Mr. Cornelius' dietary supplement corporation.[9]  (Cornelius Dep. Tr., DE 78-10, 41:5-8; Counterstatement ¶ 1). Generally, Mr. Rodrigues was privy to the trade secrets and development work at Syntrax. (*Id.* at 41:8-10).[10]  However, Mr. Rodrigues was not aware of a compound called dicreatine

_____

[9]

Mr. Cornelius testified at his deposition that Mr. Rodrigues worked at Syntrax in 2001. (Dep. Tr., DE 78-10, 41:5-10). In his Declaration, Mr. Cornelius states Mr. Rodrigues worked at Syntrax until early 2002. (Cornelius Decl., DE 80, ¶ 11). Mr. Rodrigues implies in his deposition that his employment with Syntrax was terminated by January 2001, at the latest. (Rodrigues Dep Tr., DE 88-3, 11:4-8). The date of termination of Mr. Rodrigues' employment with Syntrax is not material, as it is uncontroverted that Mr. Rodrigues had no knowledge of dicreatine malate, and that he did not share any knowledge of dicreatine malate with Mr. Boldt.

[10]

Mr. Cornelius further testified, "It is my belief and understanding" that Mr. Rodrigues provided trade secrets, including the formula for dicreatine malate, to Mr. Boldt (*Id.* at 41:11-21), and included the same in his declaration (DE 80). Mr. Cornelius' uncorroborated belief and self-serving affidavit will not defeat summary judgment. *Barmag*

malate, nor did he receive from anyone at Syntrax any documents or information regarding dicreatine malate or give any such information to Mr. Boldt. (Rodrigues Dep. Tr., DE 88-3, 15:3-5; 43:23-44:7). In February 2002, Mr. Rodrigues was in contact with Mr. Boldt and was discussing terms of his potential employment at Starmark, and by April 2002, Mr. Rodrigues was working for Mr. Boldt. (Email Chain, DE 78-11, DE 78-12; Counterstatement ¶ 21; Reply Counterstatement ¶ 21). Also in April 2002, Mr. Rodrigues was aware that Mr. Cornelius had contemplated a product binding creatine to malic acid. (Bodybuilding.com Post, DE 78-16).

## 5.   Expert Reports

Starmark has timely furnished Creative with copies of its liability and damages expert reports. (Statement ¶ 24). Dr. Daniel D. Perlmutter's, a University of Pennsylvania engineer and Starmark's liability expert, has opined that the Creative 2CM product infringes the Starmark '373 Patent, and the Creative '273 Patent is invalid in light of the work of Mr. Boldt. (Statement ¶¶ 25-26).

Creative, on the other hand, identified potential expert witnesses during discovery but has not produced any expert reports regarding the validity or infringement of the Starmark '373 Patent, nor has Creative produced a response report contesting Dr. Perlmutter's opinions that the claims of the Creative '273 Patent are invalid. (Statement ¶¶ 23, 27-8, 30; Tecce Decl., DE 59, ¶¶ 5,7-8). Additionally, Creative has not made any

---

*Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F. 2d 831, 836 (Fed. Cir. 1984). (holding that to defeat summary judgment, "[t]he party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient.").

timely Rule 26 disclosures concerning potential opinion testimony. (Statement ¶ 29, Tecce
Decl., DE 59, ¶¶ 7-8).

B.    Standard for Summary Judgment

    Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment
when the pleadings and supporting materials show that, drawing all inferences in favor of
the nonmovant, there is no genuine issue as to any material fact and the moving party is
entitled to judgment as a matter of law. *See Net Moneyin, Inc. v. Verisign,* Inc., --- F.3d
----, 2008 WL 4614511, at *3 (Fed. Cir. 2008). "An issue of fact is 'material' if, under the
applicable substantive law, it might affect the outcome of the case." *Air Turbine Tech., Inc.
v. Atlas Copco AB*, 410 F.3d 701, 708 (Fed. Cir. 2005) (applying Eleventh Circuit law to
whether a fact is material, as such standard is not unique to patent law) (citation omitted).
"An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact
to find for the nonmoving party." *Air Turbine Tech.*, 410 F.3d at 708 (citation omitted). The
court's focus in reviewing a motion for summary judgment is "whether the evidence
presents a sufficient disagreement to require submission to a jury or whether it is so one-
sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477
U.S. 242, 243, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

    The moving party bears the initial burden under Rule 56(c) of demonstrating the
absence of a genuine issue of material fact. *Air Turbine Tech.*, 410 F.3d at 708 (citing
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).).
"If the movant shows a prima facie case for summary judgment, then the burden of
production shifts to the nonmovant to present specific evidence indicating there is a

21

genuine issue for trial." *Air Turbine Tech.*, 410 F.3d at 708 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). However, a nonmovant may not overcome summary judgment by merely offering conclusory statements. *SRI Intern., Inc. v. Internet Sec. Systems, Inc.,* 511 F.3d 1186, 1198 (Fed. Cir. 2008); *see also Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000). In other words, "[t]he party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F. 2d 831, 836 (Fed. Cir. 1984). Similarly, to avoid summary judgment, "there must be sufficient substance, other than attorney argument, to show that the issue requires trial." *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995); *see also Ferring B.V. v. Barr Laboratories, Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("Conclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment.").

"When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor." *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1379 (Fed. Cir. 2000). In determining whether to grant summary judgment, the court must remember that "credibility determinations . . . are jury functions, not those of a judge." *See Liberty Lobby*, 470 U.S. 242 at 265.

22

## C. Analysis

Starmark seeks summary judgment that the Creative 2CM product infringes the Starmark '373 Patent; that the '373 Patent is valid; and that the '273 Patent is invalid. Initially, Starmark argues that, because Creative did not timely disclose an expert pursuant to Federal Rule of Civil Procedure 26, per Federal Rule of Civil Procedure 37, Creative cannot now offer expert testimony on summary judgment. Starmark argues that a finding of invalidity requires expert testimony, and Creative's contention that the Starmark '373 Patent is invalid must fail. Starmark additionally argues that Creative cannot establish that the claims of the '373 Patent were anticipated by Mr. Haynes and Mr. Cornelius' work on dicreatine malate. As to infringement and invalidity of the '273 Patent, Starmark argues that Dr. Daniel D. Perlmutter's uncontroverted expert testimony establishes that Creative's 2CM product infringes the Starmark '373 Patent and that the Creative '273 Patent is invalid.

Creative, on the other hand, argues that Dr. Perlmutter's expert report should be disregarded as conclusory and failing to meet the standards of Federal Rule of Civil Procedure 703.[11] Creative further argues that there is a question of fact as to whether Creative or Starmark has priority of ownership of dicreatine malate, and that I cannot reach a decision on summary judgment as to the validity of the '373 or '273 Patents or infringement. I first address the validity of the '373 Patent, and then turn to infringement of the '373 Patent and validity of the '273 Patent.

---

11

The controversy over Dr. Perlmutter's expert report is relevant only to infringement of the '373 Patent and invalidity of the '273 Patent and is discussed at page 30 of this order.

23

### 1.    Invalidity of the '373 Patent

As noted above, Creative alleged in its Complaint that the claims of the '373 Patent are invalid in light of the prior work of Mr. Haynes and Mr. Cornelius. A patent is presumed to be valid. *See* 35 U.S.C. § 282.[12]  To overcome this presumption of validity, the party challenging a patent must prove facts supporting a determination of invalidity by clear and convincing evidence. *Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P. C.*, 482 F.3d 1347, 1357-58 (Fed. Cir. 2007) (citing *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1564 (Fed. Cir. 1997)); *Verdegaal Bros. Inc., v. Union Oil Co. of Cal.*, 814 F.2d 628, 631 (Fed. Cir.1987) ( "Our precedent holds that the presumption of validity afforded a U.S. patent by 35 U.S.C. § 282 requires that the party challenging validity prove the facts establishing invalidity by clear and convincing evidence." (citations omitted)). Therefore, it is Creative's burden to show by clear and convincing evidence that the Starmark '373 Patent is invalid.

Typically, expert testimony is required to support a finding of invalidity. Only where the patent or invention is so simple and easily understood is expert testimony not required. *See Aspex Eyewear, Inc. v. Concepts In Optics, Inc.,* 111 Fed. Appx. 582, 588 (Fed. Cir. 2004) ("This is not one of those rare cases where the invention is so simple that expert testimony is not required.") This is not one of those cases. The issues presented by the

---

12

28 U.S.C. § 282 provides, in pertinent part:

> A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. . . .The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

'373 Patent (and in the case at large), including the chemical structure of dicreatine malate and whether the concepts reflected in the emails of Mr. Cornelius and Mr. Haynes disclose each of the claims of the '373 Patent, are "sufficiently complex to fall beyond the grasp of an ordinary layperson," and therefore require expert testimony. *See Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F. 3d 1256, 1267 (Fed. Cir. 2008).

It is Creative's burden to produce expert testimony to support its claim for invalidity. *Aspex Eyewear,* 111 Fed. Appx. at 588 ("The party asserting invalidity has the burden of introducing such [expert] evidence . . .). As discussed above, Creative failed to comply with Federal Rule of Civil Procedure 26 and timely file an expert report, and I denied Creative's tardy request for relief from such Rule. Accordingly, Creative has not, and cannot, present expert testimony to meet its burden under its assertion of invalidity. Creative's claim that the '373 Patent is invalid therefore fails as a matter of law. *See Proveris Scientific Corp.*, 536 F. 3d at 1268 (affirming district court's entering judgment as a matter of law in favor of plaintiff on invalidity where defendant raised invalidity as an affirmative defense and district court disallowed defendant's expert testimony; "We thus are not prepared to say the district court abused its discretion in requiring [plaintiff] to present expert testimony in order to establish invalidity. . . ."[W]e see no abuse of discretion in the district court's decision to exclude and limit . . . [expert] testimony . . . . Accordingly, we will not disturb the district court's grant of JMOL in favor of [defendant] on the issue of [plaintiff's] affirmative defense of invalidity."). While, in this case, lack of expert testimony is grounds enough to grant summary judgment on validity of the '373 Patent, I

address the parties' arguments regarding anticipation and derivation.[13]

    a.   Anticipation

Creative first argues that the Starmark '373 Patent is invalid as it was anticipated by Mr. Cornelius and Mr. Haynes. A patent claim is anticipated under 35 U.S.C. §102 when all of the elements of the claim are found either expressly or inherently in a single prior art reference. *Celeritas Techs., Ltd. v. Rockwell, Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998); *ATD Corp. v. Lydall, Inc.,* 159 F. 3d 534, 545 (Fed. Cir. 1998) ("A patent is invalid for anticipation when the same device or method, having all of the elements and limitations contained in the claims, is described in a single prior art reference."). "An anticipating reference must describe the patented subject matter with sufficient clarity and detail to establish that the subject matter existed and that its existence was recognized by persons of ordinary skill in the field of the invention," *ATD Corp.,* 159 F.3d at 545, and "[e]very element of the claimed invention must be literally present, arranged as in the claim." *Richardson v. Suzuki Motor Co., Ltd.*, 868 F. 2d 1226, 1236 (Fed. Cir. 1989). In other words, "[u]nless all the elements are found in a single piece of prior art in exactly the same situation and united the same way to perform the identical function, there is no anticipation." *Sandisk Corp. v. Lexar Media, Inc.,* 91 F. Supp. 2d 1327, 1335-336 (N.D. Cal. 2000). Finally, while anticipation is a question of fact, "it may be decided on summary

---

13

Creative also argues that the claims of the '373 Patent were anticipated by the Llwellyn '902 application (Response, DE 78, p. 19), and the '373 Patent is obvious over Cornelius and the '407 Patent (*Id.* at p. 20). Creative failed to identify these defenses to Starmark during discovery (Creative Response to Interrogatories, DE 87-3), and cannot do so now. Moreover, the only basis Creative provides for these arguments is the analysis and declaration of Dr. Brittain, which, as discussed above, I will not consider.

26

judgment if the record reveals no genuine dispute of material fact." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008).

Here, the only facts in support of Creative's anticipation claim are the November 2001 and January 2002 emails referencing "dicreatine malate." The emails do not describe the invention, and while Mr. Cornelius wrote that "the technology behind the creatine malates should be nearly the same as the creatine citrates," this language does not describe the process with sufficient clarity and detail to establish anticipation. In sum, the emails do not provide sufficient clarity and detail to establish that the subject matter existed and that its existence was recognized by persons of ordinary skill in the field of the invention, and the mere use of the term "dicreatine malate" in the November 2001 and January 2002 emails does not indicate anticipation. *See Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 147 F. 3d 1374, 1380 (Fed. Cir. 1998) (use of same words does not indicate anticipation "simply by possessing identically named parts, unless these parts also have the same structure or otherwise satisfy the claim limitations, and were understood to function in the same way by one skilled in the art").[14]

### b.    Derivation

Creative next argues that the Starmark '373 Patent is invalid because Mr.

---

14

As to Creative's claims that Mr. Boldt's assertion of his date of conception is uncorroborated, because Creative has not established prior art anticipating the asserted claims, it is not Starmark's burden to prove priority and date of conception. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008) (holding that once party asserting invalidity established prior art anticipating the asserted claims, "the burden was on [the patentee] to come forward with evidence to the contrary"). Additionally, even if I were to give no deference to Mr. Boldt's uncorroborated statement, there is no genuine issue of material fact as it pertains to Creative's emails and whether Creative has demonstrated prior art anticipating the claims of the '373 Patent.

Rodrigues, a former employee of Syntrax, derived the invention claimed in the '373 Patent from Mr. Cornelius and communicated it to Mr. Boldt. 35 U.S.C. § 102(f) provides that "[a] person shall be entitled to a patent unless ... he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f). "To prove derivation under § 102(f), 'the party asserting invalidity must prove both prior conception of the invention by another and communication of that conception to the patentee' by clear and convincing evidence." *Eaton Corp. v. Rockwell International Corp.*, 323 F. 3d 1332, 1334 (Fed. Cir. 2003) (quoting *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F. 3d 1573, 1576 (Fed. Cir.1997)). "The communication must be sufficient to enable one of ordinary skill in the art to make the patented invention." *Id.*

The record evidence shows that Mr. Rodrigues was at one point employed by Syntrax and worked with Mr. Cornelius, and that Mr. Rodrigues later worked for Mr. Boldt. However, there is no record evidence to indicate that Mr. Rodrigues knew of dicreatine malate, knew of Syntrax's or Creative's suppliers of dicreatine malate, or communicated any knowledge of dicreatine malate to Mr. Boldt. The only evidence Creative points to is the uncorroborated deposition testimony and declaration of Mr. Cornelius. And even in this testimony, Mr. Cornelius states, he "believed" that Mr. Rodrigues stole trade secrets and passed them on to Mr. Boldt. Mr. Cornelius himself points to no personal knowledge or corroborating evidence of such facts. Mr. Cornelius' uncorroborated testimony and statements grounded in belief and conjecture rather than personal knowledge will simply not withstand summary judgment. I therefore conclude that Creative's derivation claim fails. Because Creative failed to present expert testimony on the invalidity of the '373 Patent, and because I conclude that Creative's anticipation and derivation claims fail, I

28

grant summary judgment in Starmark's favor on the issue of validity of the Starmark '373 Patent.

## 2.   Infringement of the '373 Patent[15]

Starmark next moves for summary judgment that Creative's C2M product infringes the Starmark '373 Patent.   The patentee, in this case Starmark,"bears the burden of proving infringement by a preponderance of the evidence." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). "An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1356 (Fed. Cir. 2007) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (citations omitted)). Here, I determined the claim scope in my July 11, 2008 Order Regarding Construction of Claim Terms (DE 49).

As for the second step, because determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact, *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.Cir.1998), "summary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." *Hilgrave Corp.*

---

[15]

In a patent infringement case such as this, Federal Circuit law applies with respect to issues of substantive patent law and certain procedural issues pertaining to patent law, but regional circuit law applies to non-patent issues. *Research Corp. Tech., Inc. v. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008).

v. Symantec Corp., 265 F.3d 1336, 1341 (Fed. Cir. 2001). To succeed on an infringement claim, a patentee must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim. See Lemelson v. United States, 752 F. 2d 1538, 1551 (Fed. Cir.1985) ("It is ... well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element ... in the accused device."); Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1535 (Fed.Cir.1991) ("the failure to meet a single limitation is sufficient to negate infringement of the claim"). As discussed more fully below, I conclude that, when viewing the material in the light most favorable to the non-movant Creative, there is no genuine issue that Creative 2CM product infringes the Starmark '373 Patent.

a.       Testimony of Dr. Daniel D. Perlmutter

In support of its Motion for Summary Judgment, Starmark has offered the Declaration and Expert Report of Dr. Daniel D. Perlmutter [DE 59-4].[16] Starmark disclosed Dr. Perlmutter as an expert and timely served Creative with his October 23, 2008 expert report. Creative does not dispute Dr. Perlman's qualifications to serve as an expert in this case, but argues the expert opinion should be disregarded because it "is devoid of any testing, analysis, scientific data or literature" to support Dr. Perlmutter's ultimate conclusions. (Response, DE 78, p. 12).

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states: "If scientific, technical, or other specialized knowledge will assist

---

16

Creative was offered the opportunity to depose Dr. Perlmutter, but elected not to do so in conjunction with summary judgment, instead electing to depose him only if the case goes to trial. Accordingly, Creative did not depose Dr. Perlmutter prior to the summary judgment pleadings.

the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702. The Supreme Court set forth the criteria for the admissibility of scientific expert testimony under Rule 702 in *Daubert* by instructing trial judges to "determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue," which includes "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and or whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The relevant inquiry is whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rink v. Cheminova, Inc.*, 400 F. 3d 1286, 1291-92 (11th Cir. 2005).

Applying this guidance to Dr. Perlmutter's expert report [DE 59-4], I conclude the report satisfies Federal Rule of Evidence 702 and *Daubert*. In his report, Dr. Perlmutter explains that he reviewed the '373 and '273 Patents, the specification for the Creative 2CM product, and the Court's order on claims construction in reaching his conclusions that the 2CM product infringes the '373 Patent and the '273 Patent is invalid [DE 59-4, p. 4]. Regarding his conclusions on infringement, Dr. Perlmutter explains his methodology:

31

"After having an understanding of both the claims of the ['373] patent and the composition of the 2CM product, I compared the 2CM product to each element of claims 1, 2, 3, 7, 8, 9, and 10 of the '373 patent." [DE 59-4, p. 4]. Dr. Perlmutter concluded that the composition of 2CM is such that it has a formula depicted in claim 1 because it contains an anion of a dicarboxylic acid and malic acid.[17] Thus Dr. Perlmutter explained his process and methodology.

As to the manufacturing of the 2CM product, Dr. Perlmutter noted that Creative did not produce in discovery any information regarding the manufacturing of its 2CM product, but opined that the process most likely used to manufacture 2CM is the method claimed in claims 7 through 10 of the '272 patent. [DE 59-4, p. 8]. Dr. Perlmutter reserved the right to supplement his opinion upon Creative's production of its manufacturing process. While Creative argues that Dr. Perlmutter had no basis for inferring the process by which 2CM is manufactured, that is by Creative's own doing, as Creative failed to produce documentation regarding the process. I conclude that Dr. Perlmutter's inferences about the manufacturing process stand, and note that Creative, who brought suit in October 2007 seeking a declaration of non-infringement of the 2CM product, has offered no argument as to why or how the process employed to create the product does not infringe the '373 Patent.

Finally, regarding invalidity of the '273 Patent, Dr. Perlmutter "compared the claims of the '273 patent with the disclosure and the work of Mr. Boldt." [DE 59-4, pp. 4-5], and opined that the '273 Patent is invalid in light of such work. [DE 59-4, p. 8]. Creative argues

17

During oral argument, Creative Compounds conceded that the 2CM product infringes the apparatus claims of the '373 Patent.

32

in wholesale form that the comparison of claims and specifications of patents is an unacceptable methodology, but does not explain why or offer an alternate methodology. Accordingly, I conclude that Dr. Perlmutter's expert report meets the standards of Federal Rule of Evidence 702 and *Daubert*, and I consider the opinions set forth therein.

b.     Need for Expert Testimony to Prove Infringement

The Federal Circuit has recognized that expert testimony is not necessary to establish infringement where the patented matter is "easily understandable without the need for expert explanatory testimony." *Centricut, LLC v. Esab Group, Inc.*, 390 F. 3d 1361, 1370 (Fed. Cir. 2004) (citing *Union Carbide Corp. v. Am. Can Co.*, 724 F. 2d 1567, 1573 (Fed. Cir. 1984); *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1384 (Fed. Cir. 2004)). However,"[w]here the field or art is complex," the Federal Circuit has "repeatedly approved the use of expert testimony to establish infringement." *Id.* (citing *Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc.*, 127 F.3d 1065, 1070 (Fed. Cir. 1997). As discussed above, the subject matter raised by the '373 Patent and in this suit is sufficiently complex to warrant expert testimony on infringement.

Starmark has presented expert testimony supporting infringement, and I rely on this testimony in reaching the conclusion that Creative's 2CM product infringes the Starmark '373 Patent. *See Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1356 (Fed. Cir. 2001) ("The district court can not be faulted for relying on the only expert explanation of the technology that was presented. Evidence concerning the technological aspects of a patented invention may be of assistance to the court when dealing with complex technologies or those outside of the court's expertise."). Creative has failed to submit expert testimony rebutting Dr. Perlmutter's conclusions, and has also failed to offer any

33

theory of non-infringement (other than to suggest the Court should strike Dr. Perlmutter's report). On these facts, Creative cannot overcome summary judgment. *Cf. Centricut, LLC v. Esab Group, Inc.,* 390 F. 3d 1361, 1370 (Fed. Cir. 2004) ("We do not state a per se rule that expert testimony is required to prove infringement when the art is complex. Suffice it to say that in a case involving complex technology, where the accused infringer offers expert testimony negating infringement, the patentee cannot satisfy its burden of proof by relying only on testimony from those who are admittedly not expert in the field. That is what happened here, and the patentee thus failed to satisfy its burden of proof. This case stands as an apt example of what may befall a patent law plaintiff who presents complex subject matter without inputs from experts qualified on the relevant points in issue when the accused infringer has negated infringement with its own expert.").

3.   Invalidity of the '273 Patent

Finally, I turn to the invalidity of the '273 Patent.[18]  Creative's only arguments in opposition of the invalidity of the '273 Patent are 1) the invalidity of the '373 Patent, and 2) the inadequacy of Dr. Perlmutter's expert report. As I have already concluded that the Starmark '373 Patent is valid and that I will credit the expert report of Dr. Perlmutter, which opines that the '273 Patent is invalid in light of the work of Matthias Boldt including the teachings of the '373 Patent, I conclude the second-filed and second-issued '273 Patent is invalid, and grant judgment in Starmark's favor.

18

As discussed above, Starmark has standing to pursue its counterclaim asserting invalidity of the '273 Patent.

### III. Conclusion

Having concluded that Starmark has standing to assert its Counterclaim alleging invalidity of the Creative '273 Patent, I reach all issues raised by Starmark on summary judgment. Based on Creative's failure to present expert testimony, as well as my conclusion that Creative's arguments on anticipation and derivation fail, I conclude that the Starmark '373 Patent is valid. Based on the expert testimony presented by Starmark, I conclude that the Creative 2CM product infringes the Starmark '373 Patent, and that the Creative '273 Patent is invalid. Accordingly, I deny Creative's Motion to Dismiss and grant Starmark's Motion for Summary Judgment. It is hereby

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.  Plaintiff's Request for Telephonic Oral Argument [DE 106] is **DENIED**.

2.  Plaintiff's Motion to Dismiss Counterclaim Under Rule 12(b)(1) [DE 98] is **DENIED**.

3.  Defendant's Motion for Summary Judgment [DE 59] is **GRANTED**.

4.  All pending motions are **DENIED AS MOOT**.

5.  All hearing dates are **CANCELLED**.

6.  This case is **CLOSED**.

DONE AND ORDERED, in Chambers, in Miami, Florida, this _12_ day of September, 2009.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
United States Magistrate Judge Chris M. McAliley
All Counsel of Record