UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-22814-CIV-GOLD/MCALILEY

CREATIVE COMPOUNDS, LLC

       Plaintiff/Counter-Defendant,

vs.

STARMARK LABORATORIES, INC.

       Defendant/Counter-Plaintiff.

_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL[1];
DENYING MOTION FOR ENHANCED DAMAGES AND ATTORNEYS' FEES [DE 165]**

**I.    Introduction**

THIS CAUSE is before the Court following a June 10, 2010 bench trial on willfulness, enhanced damages, attorneys' fees, and injunctive relief.[2]  *See* **[DE 160]**. Approximately a week before the bench trial, the parties exchanged and submitted a number of documents (e.g., deposition transcripts, video depositions, discovery responses, and documentary evidence), which they have agreed to admit into the record as evidence for my consideration.  **[Bench Trial Tr., 1:32 p.m. – 1:33 p.m., June 10, 2010]**.  The parties also exchanged and submitted Proposed Findings of Fact and Conclusions of Law. Per the parties' agreement, no witnesses were presented live.  Having considered the

---

[1] To the extent factual findings appear under the "Conclusions of Law" heading or vice-versa, the pertinent facts or conclusions shall be construed appropriately and shall not be constrained by the heading under which they appear.

[2] The parties stipulated to the scope of permanent injunctive relief and an actual damages figure (i.e., $112,500), waived their right to a jury trial, and requested a bench trial on the issues of willfulness, enhanced damages, and attorneys' fees.  *See* **[DE 131]**; **[DE 160]**; **[DE 161]**.

relevant submissions, the applicable law, and being otherwise duly advised, I conclude that Defendant/Counter-Plaintiff Starmark Laboratories, Inc. ("Starmark") has failed to prove by clear and convincing evidence that: (1) Plaintiff/Counter-Defendant Creative Compounds, LLC ("Creative") willfully infringed the '373 patent; or (2) that this matter qualifies as an "exceptional case."

## II.    Procedural Posture

After approximately three years, three motions to withdraw, seven sets of Plaintiff's attorneys, a lengthy summary judgment order, a request for a "confessed injunction," a petition for a writ of mandamus, two pre-trial stipulations and a bench trial, this case is finally ripe for resolution.  Although I am not required to set forth the procedural posture of this matter pursuant to Fed. R. Civ. P. 52(a), I believe that a brief summary of this case's procedural history will help place this Order in context.

This action was initiated by Plaintiff/Counter-Defendant Creative Compounds LLC ("Creative") on October 26, 2007, when it filed a two-count complaint against Starmark requesting declarations that: (1) it was not infringing Starmark's '373 Patent; and (2) Starmark's '373 Patent was invalid.[3]  On January 22, 2008, Starmark answered Creative's Complaint and asserted counterclaims alleging, *inter alia*, that: (1) Creative's dicreatine malate product ("2CM") infringes the claims of Starmark's '373 Patent; and (2) the claims of Creative's '273 Patent are invalid.  In connection with its counterclaim, Starmark sought damages, declaratory relief, and injunctive relief.  On February 14, 2008, Creative answered Starmark's counterclaim.

_____

[3] See **[DE 107]** for a thorough discussion of the two patents at issue in this litigation.  This Order is primarily concerned with Starmark's '373 patent.

After preliminary discovery was taken, I entered an Agreed Order on Claims Construction on July 14, 2008,[4] and on August 5, 2008, I granted the parties an additional three months – i.e., until November 15, 2008 – to complete fact discovery.[5]  Between August 27, 2008 and February 7, 2009, no motions or notices were filed by the parties with the exception of a Motion to Withdraw filed by Creative's lead counsel, which was granted on January 26, 2009.  At the time the Motion to Withdraw was granted, Creative had made arrangements for Jonathan Fortman, Esq. to assume responsibility as lead counsel.

On February 27, 2009, Starmark filed a Motion for Summary Judgment,[6] seeking summary judgment on the validity and infringement of Starmark's '373 patent, as well as on the invalidity of Creative's '273 Patent.  I promptly set oral argument for May 22, 2009.  However, subsequent to the issuance of my oral argument order, Creative moved for two extensions of time to respond to Starmark's motion – which I granted – and oral argument was cancelled and re-scheduled for June 26, 2009.  Then, on May 15, 2009, Creative filed its response in opposition to Starmark's Motion for Summary Judgment accompanied by a motion requesting: (1) leave to amend its answer; and (2) leave to retain an expert witness.[7]  Following a telephonic hearing, I denied Creative's Motion for Leave, noting the severe tardiness of Creative's requests as well as the fact that granting them would "undoubtedly delay adjudication of [Starmark's] summary judgment motion and prejudice

---

[4] **[DE 49]**.

[5] **[DE 51]**.

[6] **[DE 59]**.

[7] **[DE 73]**.

3

[Starmark], both in terms of undue delay to the disposition of this case, and costs and fees . . . ."[8]

Then, on June 26, 2009 – that is, the very same day that oral argument on Starmark's Motion for Summary Judgment was scheduled to be heard – Creative filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing that Starmark lacked standing to assert its counterclaim for declaratory judgment.[9]  Rather than cancelling oral argument on Starmark's Motion for Summary Judgment yet again, I let the hearing proceed and issued an Omnibus Order on September 17, 2009 ("the Summary Judgment Order"), granting Starmark's Motion for Summary Judgment, denying Creative's Motion to Dismiss, and entering final judgment in favor of Starmark on the grounds that: (1) Starmark's '373 Patent was valid; (2) Creative's '273 patent was invalid; and (3) Creative's 2CM product infringed Starmark's '373 Patent.[10]

On October 1, 2009, it was brought to my attention that my Summary Judgment Order had not disposed of all outstanding issues in the case and thus warranted modification.  Specifically, questions of damages, willful infringement, injunctive relief, and exceptionality remained pending.  As such, I modified my Summary Judgment Order, vacated the entry of final judgment, and re-opened the case for the limited purpose of resolving the aforementioned issues.[11]  I also denied Creative's "Motion for Confessed

---

[8] **[DE 97]**.

[9] **[DE 98]**.

[10] **[DE 107]**; **[DE 108]**.

[11] **[DE 127]**.

Injunction" without prejudice on equitable grounds[12] and issued a Phase Two Scheduling Order[13] setting a June 7, 2010 jury trial on the issues of damages, willfulness, enhanced damages, attorneys' fees, and injunctive relief.

On April 4, 2010, I held a pre-trial conference and referred the parties to Magistrate Judge William Turnoff for a settlement conference.  Although the parties were unable to resolve the outstanding issues in their entirety, the parties were ultimately able to agree on an actual damages figure of $112,500.[14]  They also agreed to waive their right to a jury trial and requested a bench trial on the issues of willfulness, enhanced damages, attorneys' fees, and injunctive relief.[15]  The bench trial was conducted on June 10, 2010.  Having considered the relevant submissions and the arguments of the parties as presented at the bench trial, I now find and conclude as follows.

III.    **Findings of Fact**

1.      This case involves a dietary supplement known as dicreatine malate[16] and arises out of Creative's past and ongoing infringement of the claims of Starmark's '373 Patent, as well as the invalidity of Creative's '273 Patent.

---

[12] **[DE 132]**.  Although Creative sought mandamus relief from the Federal Circuit with respect to this Order, its petition was denied on March 24, 2010.

[13] **[DE 134]**.

[14] See **[DE 160]**.

[15] See **[DE 161]**.

[16] Creatine salts are used in athletic training and other endeavors.  Creatine is difficult to efficiently absorb in the body.  Therefore, producing a supplement that increases the absorption of creatine has long been a desired goal in the supplement industry and has great value to consumers, manufacturers, and distributors.

2.      In 1994, Mr. Matthias Boldt ("Boldt"), President and CEO of Starmark, experimented with a number of creatine compounds and began to market several such compounds.

3.      In December 2002, Mr. Boldt submitted a provisional patent application to the United States Patent and Trademark Office ("USPTO") entitled "Di- and Tri-Creatine Malate and Malate and Method of Making Same."

4.      In December 2003, Mr. Boldt filed a non-provisional utility patent application entitled "Creatine Salts and Method of Making Same" with the USPTPO.

5.      On April 30, 2003, Gary Haynes ("Haynes"), President and CEO of Creative, and Derek Cornelius, a Creative consultant, filed a patent application for "Dicreatine Malate" with the USPTO.

6.      In January 2002, prior to the time Mr. Boldt submitted the aforementioned provisional patent application, Mr. Haynes exchanged a number of emails with Chinese manufacturers referencing dicreatine malate, and on April 4, 2002, Joey Rodrigues – a consultant who worked for Mr. Cornelius from 1999 until he left to work for Mr. Boldt in approximately March 2002 – authored a post on a BodyBuilding.com message board referencing "the idea of binding creatine to malic acid."

7.      On September 19, 2006, the USPTO issued the '373 Patent, entitled "Creatine Salts and Method of Making Same," to Mr. Boldt and assignee SAN Corporation.

8.      On October 31, 2006, the USPTO issued the '273 Patent, entitled "Dicreatine Malate," to Messrs. Cornelius and Haynes and assignee Creative.

9.      On August 25, 2006 – i.e., before either the '273 or '373 patents had issued –

6

Creative's patent counsel, Adorno & Yoss LLP, sent a letter to Mr. Haynes stating,

in pertinent part, as follows:

> It has also come to my attention that SAN Corporation has sent a number of threatening letters to the industry alleging that it also has received a Notice of Allowance of its patent application entitled *Creatine Salts and Method of Making Same*. These letters purport to put the industry on notice of infringement of the patent, which, according to SAN, will soon issue. Even if SAN is correct that a patent will issue from its application, the patent will not be enforceable because of your prior inventions and work . . . I do not believe that a patent issued to SAN on its application would be enforceable.

**[DE 100, p. 24].**

10.    After the issuance of the '373 Patent, Creative sold – and continues to sell

       – a compound under the trade name 2CM which infringes the claims of

       Starmark's '373 Patent.[17]

11.    Starmark has not moved this Court for an injunction that would prevent

       Creative from continuing to sell 2CM.

12.    Starmark and Creative have stipulated that the actual damages incurred

       by Starmark on its patent infringement counterclaim is One-Hundred

       Twelve Thousand Five Hundred Dollars ($112,500).[18]

13.    Starmark now requests that I award enhanced damages and attorneys'

---

[17] *See* **[DE 107]** (holding that the '373 Patent is valid, that the '273 Patent is invalid, and that Creative's 2CM product infringes the '373 Patent); *see also Jamesbury Corp. v. Litton Industries Products, Inc.*, 839 F.2d 1544, 1550 (Fed. Cir. 1988) (expounding law of the case doctrine and noting that "[t]he doctrine requires a court to follow the decision on a question made previously during the case"), *cert. denied*, 488 U.S. 828 (1988), *overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992).

[18] The parties' stipulation on actual damages is subject to Creative's right to appeal the issue of liability as determined by the grant of partial summary judgment.

fees pursuant to 35 U.S.C. §§ 284-85, respectively.

IV.    **Conclusions of Law**

      A.    <u>Enhanced Damages – Willfulness</u>

14.    As the Federal Circuit has stated, "patent infrginement is a strict liability offense."  *In re Seagate, LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007). Thus, the nature of the offense is not relevant to a defendant's liability; instead, "the nature of the offense is only relevant in determining whether enhanced damages are warranted" pursuant to 35 U.S.C. § 284.  *Id.*

15.    While Section 284 does not articulate a standard for awarding enhanced damages, *see* 35 U.S.C. § 284 (stating that "the court may increase the damages up to three times the amount found or assessed"), the Federal Circuit has "held that an award of enhanced damages requires a showing of willful infringement."  *In re Seagate*, 497 F.3d at 1368.

16.    In *Seagate*, the Federal Circuit articulated a new standard for willful infringement – one that sets a higher bar for willful infringement than the previously-endorsed "lower threshold for willful infringement that is more akin to negligence."  *Id.*  at 1370.

17.    Prior to the Federal Circuit's decision in *Seagate*, the willfulness inquiry in the context of patent infringement focused on whether a potential infringer satisfied its "affirmative duty to exercise due care to determine whether or not [it was] infringing."  *Id.* at 1368-69 (citing *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983)).

18.     However, in *Seagate*, the Federal Circuit held that the *Underwater Devices* standard "fail[ed] to comport with the general understanding of willfulness in the civil context." *Seagate*, 497 F.2d at 1371. "Accordingly, [the Court] overrule[d] the standard set out in *Underwater Devices* and h[e]ld that proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness." *Id.*

19.     Thus, under the current standard, "to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent . . . . If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.* (citing United States Supreme Court precedent for the proposition that "willful violations" are those taken "in reckless disregard of the law") (cites and internal quotation marks omitted).

20.     Starmark contends that it has demonstrated by clear and convincing evidence that Creative's pre-filing conduct[19] constituted willful infringement of the '373 patent.

21.     Creative responds that it was not objectively reckless because it

---

[19] Because Starmark did not attempt to stop Creative's infringing activities by moving for a preliminary injunction, it will "not be allowed to accrue enhanced damages based solely on [Creative's] post-filing conduct." *Id.* at 1375 (noting that "willful infringement in the main must find its basis in prelitigation conduct").

reasonably relied on the advice of competent patent counsel, who advised Creative in August 2006 that the '373 patent, even if it were to issue, would not be enforceable because of the prior work done by Haynes and Cornelius on dicreatine malate.[20]

22.    Under well-settled Federal Circuit case law, "good faith reliance on the competent advice of counsel constitutes a defense to willfulness." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996).  This holds true under both the *Underwater Devices* and *Seagate* standards. *Seagate*, 497 F.3d at 1374-75; *Mahurkar*, 79 F.3d at 1579.[21]

23.    Although an infringer need not prove that it sought the advice of competent counsel in order to defeat a claim of willful infringement, *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1056

---

[20] *See In re Martin Gleave*, 560 F.3d 1331 (Fed. Cir. 2009) (explaining that a prior art reference "enables a method [when] a person of ordinary skill would know how to use – in other words, to practice or to carry out – the method in light of the reference" and further noting that the "naming of a theoretical compound" can anticipate a compound where "a person of ordinary skill in the art's ability [can] make the claimed compound").

[21] While it is unclear from Federal Circuit precedent whether the advice-of-counsel defense is germane to the objective or the subjective prong of the willfulness inquiry, it is beyond question that the advice-of-counsel defense does, in fact, constitute a legitimate defense to a claim of willful infringement.  *Compare Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996) ("With the focus on an *infringer's mental state*, good faith reliance on the competent advice of counsel constitutes a defense to willfulness."), *with Vulcan Engineering Co., Inc. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1378 (Fed. Cir. 2002) (stating that "focus is generally on whether infringer exercised due care to avoid infringement, usually by seeking the advice of competent and *objective counsel*, and receiving exculpatory advice" and further noting that "[w]hen it is found that the infringer acted without a *reasonable belief* that its actions would avoid infringement, the patentee has established willful infringement . . . ") (emphasis added).

(Fed. Cir. 1994) ("Possession of a favorable opinion of counsel is not essential to avoid a willfulness determination. . . ."), whether or not an alleged infringer sought the advice of counsel is "crucial to the [willfulness] analysis." *Seagate*, 497 F.3d at 1369.

24.     In fact, the Federal Circuit considers advice of counsel to be of such import that "good faith" reliance on "competent and objective counsel" that provides "exculpatory advice" has been held sufficient, standing alone, to defeat a claim of willful infringement. *See Vulcan Engineering Co., Inc., v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1378-79 (Fed. Cir. 2002) (affirming district court's holding that claim of willful infringement was defeated where "[t]he district court found that [defendant] relied in good faith on the attorney's advice that the [patent at issue] was either invalid or did not cover the system proposed by [defendant], based on written opinions," even though the defendant "took no steps to obtain the advice of counsel until it was notified of infringement").

25.     In the instant case, Creative sought and reasonably relied[22] on the advice

---

[22] Because Starmark failed to file a timely motion to compel regarding Creative's purportedly improper invocation of the attorney-client privilege, I reject Starmark's assertion that Creative may not rely upon the Adorno & Yoss opinion letter for purposes of these willfulness proceedings, as this argument has been waived. *Price v. Maryland Cas. Co.*, 561 F.2d 609, 611 (5th Cir. 1977) (noting that "[w]hile Fed.R.Civ.P. 37[] does not specify a time limit in which procedures to compel discovery must be undertaken, courts interpreting that rule have recognized that unreasonable delay can result in a waiver of a party's right to avail himself of the rule"); *De La Rosa v. St. Charles Gaming Co., Inc.*, No.: 04-CV-540, 2005 WL 2284205, at *8 (E.D. Tex. Aug. 9, 2005) (holding that a party's "attacks on . . . discovery tactics are waived insofar as [the party] did not file a motion to compel or present any discovery dispute to the court for resolution").

of competent and objective patent counsel, who concluded that Creative's work substantially predated the work of Starmark's predecessor and would thus render the '373 Patent – were it to issue – unenforceable.

26.    Furthermore, Creative sought advice of counsel *before* it engaged in any potentially infringing activities, as the exculpatory letter was dated August 25, 2006 – approximately one month prior to the issuance of Starmark's '373 Patent.  *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it.  A 'patent pending' notice gives one no knowledge whatsoever.").

27.    Accordingly, I conclude that Creative did not willfully infringe the '373 Patent and that Starmark is therefore not entitled to an award of enhanced damages.

B.    Enhanced Damages – *Read* Factors

28.    Alternatively, I note that even if Starmark were able to prove by clear and convincing evidence that Creative willfully infringed the '373 patent, I would decline to enhance damages based on the factors set out in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992), *superseded on other grounds as recognized by Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996).

29.    These factors, commonly referred to as the "*Read* factors," include: (1) "whether the infringer deliberately copied the ideas or design of another";

(2) ""whether the infringer knew of the patent, investigated the patent's scope and formed a good-faith belief of its invalidity or noninfrginement"; (3) "the infringer's behavior as a party to the litigation"; (4) the "infringer's size and financial condition"; (5) the "closeness of the case"; (6) the "duration of Defendant's misconduct"; (7) "remedial action by the infringer"; (8) the "infringer's motivation for harm"; and (9) "whether the infringer attempted to conceal its misconduct." *i4i Ltd. P'ship v. Microsoft Corp.,* 589 F.3d 1246, 1273-74 (Fed. Cir. 2010); *Read,* 970 F.2d at 826-27 (citations omitted); *Judkins v. HT Window Fashions Corp.*, --- F. Supp. 2d. ----, 2010 WL 1292158, at *6 (W.D. Pa. Mar. 31, 2010) (citations omitted).

30.   With respect to the first factor, Starmark conceded at the bench trial that it has not presented any evidence demonstrating that Creative copied the ideas of another.  Thus, this factor militates against any enhancement of damages.

31.   As for the second factor, I note that while Creative knew of the '373 Patent, it took affirmative steps to investigate the '373 Patent and formed a good-faith belief of its invalidity based on the opinion of patent counsel. Therefore, this factor also weighs in favor of non-enhancement.

32.   The third factor, which requires that I consider "the infringer's behavior as a party to the litigation," counsels in favor of enhancement.  While I decline to conclude that Creative's aggressive litigation tactics rise to the level of misconduct, bad faith, or vexatiousness, I certainly agree that certain actions taken by Creative's lawyers – e.g., filing a motion to

dismiss for lack of subject-matter jurisdiction just hours before oral argument on Starmark's Motion for Summary Judgment – were disruptive, unprofessional, and inconvenienced both Starmark and the Court.

33.  The next factor is Creative's size and financial condition.  While the evidence regarding Creative's earnings is far from clear,[23] neither party has presented any evidence regarding the effect that an enhanced damage award might have on Creative.  Accordingly, this factor merits little, if any, consideration.

34.  The fifth element, the closeness of this case, weighs in favor of enhancement.  As noted in my Summary Judgment Order, the question of Creative's infringement of the '373 Patent was not particularly close due to Creative's failure to rebut the expert testimony proffered by Starmark. *See generally* **[DE 107]**.

35.  Sixth, I consider the duration of Defendant's misconduct.  Starmark argues that enhanced damages are warranted because Creative was an "infringer[] prior to the time the case was filed [and] . . . continue[s] to be [an] infringer[]." **[Bench Trial Tr., 3:17 p.m.]**.  While it is true that Creative has continuously infringed the '373 Patent since its issuance in September

---

[23] At trial, counsel for Starmark represented to the Court that Creative had sales of $1.28 million in 2007 and sales of roughly $68,000 the following year.  **[Bench Trial Tr., 3:19 p.m. - 3:20 p.m.]**.  Starmark then argued that because Creative refused to produce certain financial and tax documents, I should draw an "adverse inference" that Creative could afford to pay any award of enhanced damages.  **[Bench Trial Tr., 3:23 p.m.]**.  Because Starmark never moved to compel the aforementioned financial documents, it has waived any right it may have had to request an inference based on Creative's failure to produce.  **[Bench Trial Tr., 3:25 p.m.]**; note 22, *supra*.

2006, this action has been ongoing since October 26, 2007 and Starmark has failed to move for a preliminary injunction.  As the *Judkins* court noted, a court "cannot fault [an infringer], and punish it with enhanced damages, for continuing to sell its product in the absence of a preliminary injunction . . . . This factor weighs against enhancing damages."  2010 WL 1292158, at *9.

36. With respect to the seventh factor, Creative acknowledges that it has taken no remedial action.  However, it contends that none is warranted at the present time "because Creative still maintains that the [′373] Patent is invalid and still has a course of appeal as a matter of right."  **[Bench Trial Tr., 3:33 p.m.]**.  In *Read*, the Federal Circuit noted that this factor can operate as a mitigator where an infringer "voluntarily cease[s] [the] manufacture and sale of infringing [products] during the pendency of [the] litigation."  *Read*, 970 F. 2d at 827 (quoting *Intra Corp. v. Hamar Laser Instruments, Inc.*, 662 F.Supp. 1420, 1439 (E.D. Mich. 1987), *aff'd without opinion*, 862 F.2d 320 (Fed. Cir. 1988), *cert. denied*, 490 U.S. 1021 (1989)).  Here, Creative did not "voluntarily cease" its infringing activities during the pendency of the litigation and thus cannot avail itself of the "remedial action" mitigator.

37. Finally, I note that Starmark has failed to present any evidence demonstrating that: (a) Creative intended to harm Starmark; or (b) Creative attempted to conceal its misconduct.  Accordingly, neither the

15

eighth or ninth *Read* factors militate in favor of enhancement.

38.     Because only three of the nine *Read* factors counsel in favor of enhancing Starmark's damages, I conclude that an award of enhanced damages pursuant to 35 U.S.C. § 284 would not be warranted, even if Creative were found to have willfully infringed Starmark's '373 Patent.

        C.      Attorneys' Fees Pursuant to Section 285

39.     As the parties correctly acknowledge, the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.

40.     Under well-settled Federal Circuit law, "[t]he prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement."  *Leviton Mfg. Co., Inc. v. Universal Sec. Instrums., Inc.*, 606 F.3d 1353, 1358 (Fed. Cir. 2010).

41.     "The determination of whether a case is exceptional and, thus, eligible for and warranting an award of attorney fees under § 285 is a two-step process in which [I] must (1) determine whether there is clear and convincing evidence that a case is exceptional, a factual determination reviewed for clear error, and (2) if so, then determine in [my] discretion whether an award of attorney fees is justified, a determination that [is] review[ed] for an abuse of discretion."  *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1367 (Fed. Cir. 2007) (citation omitted).  "The burden of proof

16

for Section 285 motions remains with the movant to show by clear and convincing evidence that the case is exceptional." *Id.* at 1368.

42.   Starmark does not argue that Creative engaged in inequitable conduct before the PTO.   Instead, it argues that this matter qualifies as an "exceptional case" because of Creative's willful infringement, litigation misconduct, and vexatious or bad faith litigation tactics.   **[Bench Trial Tr., 3:50 p.m. – 3:57 p.m.]**.

43.   As noted above, I decline to conclude that Creative's aggressive litigation tactics – while unprofessional and of questionable effectiveness – rise to the level of misconduct, bad faith, or vexatiousness.   I have also concluded that Creative did not wilfully infringe the '373 Patent.

44.   Accordingly, this is not an "exceptional case" for purposes of Section 285 and Starmark is not entitled to an award of attorneys' fees.

**IV.   Conclusion**

Based on the foregoing, it is hereby ORDERED AND ADJUDGED that:

45.   Starmark's Motion for Enhanced Damages and Attorneys' Fees **[DE 165]** is hereby DENIED.

46.   Final Judgment as to stipulated damages and injunctive relief will be entered concurrently with this Order.

DONE and ORDERED in Chambers, Miami, Florida, this 13th day of July, 2010.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:  Magistrate Judge McAliley
      Counsel of Record

17